CASCIO, Respondent, vs. CASCIO, Appellant.

*May 7—June 15, 1951.*

For the appellant there was a brief by *William A. Cameron* and *Howard W. Cameron,* both of Rice Lake, and oral argument by *Howard W. Cameron.*

*Robert W. Dewa* and *Arthur V. Biggs,* both of Madison, for the respondent.

BROADFOOT, J. The plaintiff was in military service when the parties were married on February 8, 1944, at Grand Rapids, Minnesota. The issue of said marriage is one son, Anthony J. Cascio, Jr., who was born on March 10, 1945. Plaintiff was discharged from the armed services on March 6, 1946. For approximately the next two years the parties lived either with the parents of the plaintiff in New York or with the parents of the defendant in Bovey, Minnesota. In the early part of 1948 the defendant secured employment in Rice Lake, Wisconsin. In July of that year the plaintiff commenced an action for divorce in Florida. The parties became reconciled, the Florida action was dismissed, and he came to Rice Lake to live with his wife and son. The defendant continued to work and the plaintiff took an extension course offered by the University of Wisconsin at Rice Lake. In June, 1949, the plaintiff left Rice Lake for Madison to attend the university.

The sole question raised upon this appeal is whether the finding by the trial court of cruel and inhuman treatment is sustained by the evidence. The court's findings of fact as to cruel and inhuman treatment are as follows:

"7. That on various occasions during the married life of the said parties, the defendant became enraged at the plaintiff and refused to speak to the plaintiff for several days, and on such occasions defendant would cook meals for herself and son but not for the plaintiff; that plaintiff and defendant had a number of serious quarrels; that defendant continually complained about family finances; that the de-

fendant called plaintiff humiliating names in his presence; that as a result of said quarrels, plaintiff and defendant have separated four times and become reconciled three times; that plaintiff and defendant have not lived together continuously as husband and wife since July, 1949; that the long continued course of conduct on the defendant's part has caused plaintiff to become nervous and upset and has interfered with his health and caused plaintiff to suffer pain and humiliation in body and mind."

The only witnesses upon the trial were the parties themselves. The plaintiff testified to the acts found by the trial court to be cruel and inhuman. The defendant denied or explained the acts complained of. The record discloses that the marriage was not a happy one, and that the parties did quarrel. The plaintiff testified that upon one occasion the defendant tore up his picture taken in uniform. The defendant admitted tearing up the picture, but claimed that she did so after finding among her husband's belongings the names of several women he had kept company with since his marriage. The plaintiff admitted this and stated that his wife would always become angry when he mentioned going out with other girls. Plaintiff testified that they quarreled because defendant did not want him to attend the movies or to go bowling. The defendant admitted that they quarreled, but that the quarrels were a result of their financial problems. For example, upon one occasion at Rice Lake she urged him to play the part of Santa Claus at a store where he could earn $10, but instead of that the plaintiff took $9 from their son's bank and went on a basketball trip.

The only objective symptom of the pain and suffering in body and mind, of which the plaintiff complained, consisted of an ulcer for which he claimed he was being treated at the time of the trial. However, he had re-enlisted in the Marine Corps and had been accepted for service after an examination.

The acts of cruel and inhuman treatment found by the trial court all occurred prior to the time the plaintiff came to

Madison in June, 1949. Up to that time the parties had lived as husband and wife. If the acts complained of by the plaintiff are the type to justify the granting of a divorce under some circumstances, those circumstances are not apparent here. In any event, the parties were reconciled and the acts had been condoned.

During the summer, the plaintiff returned to Rice Lake on a fishing trip and the relations of the parties were friendly, as evidenced by their correspondence. In November, 1949, the plaintiff applied to the housing authority at the University of Wisconsin to obtain an apartment wherein the parties could live.

The only act of the defendant that was claimed by the plaintiff to be cruel and inhuman that occurred after June, 1949, was the fact that she caused a letter to be written to him by an attorney, requesting that he furnish more money for the support of his child. Plaintiff's education was being financed under the G. I. Bill of Rights. Because he was married and had one child he received an allowance from the government of $120 per month. Had he been single he would have received $90 per month. During the fourteen months between his entering the university at Madison and the divorce he made eight monthly payments of $15 each to the family, while his wife was working to support herself and their son. Under the circumstances she had cause for complaint, and that was not an act of cruel and inhuman treatment that could revive any cause for divorce that he might have had in the past.

In November, 1949, the plaintiff wrote to the defendant suggesting that she obtain a divorce. In January, 1950, the defendant made a trip to Madison to find out what the difficulty was and at that time she was informed by her husband that he wished to marry another girl. At the same time he told her that if the marriage with his proposed second wife was not successful he would divorce the second wife and remarry the defendant.

On February 7, 1950, the plaintiff wrote the defendant the following letter:

"Dear Marian:

"I'm glad that you are feeling much better and realize the fact that it is not at all to your advantage to come down here.

"I'm also very glad for you that you have renewed old acquaintances.

"Now let's get to the point. I want you to start divorce proceedings at once and I will assume the financial costs of the action. When I receive the papers I will not contest it providing that it is fair and just to both parties concerned. So if you won't tell Coe & Cam. to start then I shall have to write them for you. I want the divorce as I want to marry Gin as soon as possible, probably this summer.

"The lawyers will have to be paid by instalments as I don't have any money now and I can't even send you any money this month for Tony. Next month I shall make up for it and get him some clothes etc.

"As for the furniture & fixtures, you pay them off and keep them all.

"Let me know when you start proceedings.

"Sincerely,<br>"Tony"

This letter explains plaintiff's real reason for wanting a divorce. It was not because of any cruel and inhuman treatment of the plaintiff by the defendant but it was to permit him to marry one of the girls with whom he had kept company since his marriage. The record herein is not one that will support a judgment for divorce in favor of the plaintiff.

*By the Court.*—Judgment reversed and cause remanded with directions to dismiss the plaintiff's complaint.